[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This is an action for dissolution brought by the plaintiff wife against the defendant husband. There is also a second action against the parties' two adult children on a claim of fraudulent conveyance in which they participated.
The parties were married on May 15, 1954 in New York. This is a first marriage for both parties. Two children were born of the marriage, Adrian and Peter, both of whom have reached their majority.
The plaintiff has resided in Connecticut for more than one year prior to the institution of this action.
The parties have stipulated that the marriage has broken down irretrievably and there is no hope of reconciliation. At the time of the hearing, both parties were 64 years of age. CT Page 6012
Both parties are well educated, the plaintiff having an A.B. degree from Hunter College and the defendant having an A.B. and a law degree from the University of Pennsylvania. While the defendant was going to law school and working at the same time, the plaintiff was also working as an actuarial assistant, and she continued to work until the birth of their first child in 1957. Two years later a second child was born and the plaintiff remained at home until the early 70's when she returned to work on a full time basis. She continued working until 1986 or 1987. During the late 80's she acquired a realtor's license and a stock broker's license although she did not work in that field for more than two or three years and apparently earned no substantial income therefrom. Her income from her actuarial assistant position was in the neighborhood of $35,000 a year.
While the defendant was a lawyer, he, very shortly after starting his practice, became involved in buying, selling and managing companies and was extremely successful. He testified he was a workaholic, and while he provided well for his family, he did not have time for them. He admitted he had little time for his wife since he traveled a good deal and returned home at irregular intervals. Prior to his mother's death, he returned home more often and more regularly than he did thereafter. By 1986 or 1987, he had almost stopped completely from returning home. He complained that the plaintiff objected to his business activities and disapproved of them. At the same time, the plaintiff had health problems including migraine headaches and was very often under the care of doctors and clinics.
Nevertheless, the plaintiff acquiesced in the defendant's frequent absences from home until 1986 or 1987 when he almost entirely stopped coming home. At that point, she asked him to sign a paper she drafted by which he agreed to give her one half of his assets in the event of a divorce. See exhibits C and E.
Thereafter, he conveyed to her a full title to the condominium in Greenwich in which she was living and to which they had moved in 1982. The defendant valued that condominium at $600,000 and in the list of assets he disclosed to her, he valued the amount of his interest in it at $300,000, which is what he transferred to her. He also transferred to her a commercial building in Deer Park, New York, which had a long term lease providing rent net to her of $200,000 a year. Following this, the plaintiff continued to live in the condominium, began to work on CT Page 6013 a part time basis at the local library, and acquiesced in the defendant's absence from the home.
It was not until 1992, when the plaintiff discovered that the defendant had a long term relationship with one woman and told her, when confronted, that there had been other women also, that she then brought this action for divorce.
Up until the time that the agreement was made in 1986 or 1987, the plaintiff had kept the home, taken care of the children until they finished college and went to work, and used her earnings to support the family. The defendant also supported the family in a somewhat more lavish style than the plaintiff could afford but in effect both of them provided funds for the family's support. Their contributions, therefore, were virtually equal.
While a large part of the evidence in this case was concerned with a redemption of the defendant's stock in one of the companies he had created, ITP, in which the two adult children were officers and had 50 percent of the stock which he had given them when they were children, that particular transaction does not seem to the court to warrant so much attention. The transaction in question was an agreement by the defendant to return his 50 percent stock in ITP to the corporation now being run by Peter and Adrian in return for a promissory note in the amount of $10,500,000 payable in 31 years and carrying six percent interest which gave him an income of over $600,000 a year.
This transaction was entered into in July of 1992 and the purpose was to prevent the plaintiff from obtaining control of the defendant's stock in the event of a divorce or his death. Since, however, the full face amount of the note for which the stock was redeemed has been listed as one of the defendant's assets, there seems to be no point in determining whether or not the transfer in question was fraudulent, either as to the plaintiff or as to the court. The court does find that it is part of the marital assets as it has been included in the defendant's affidavit.
The only question now is to what extent the plaintiff should have alimony or a share in the defendant's assets.
It seems to me under all of the circumstances that alimony is really unnecessary given the income that plaintiff derives from CT Page 6014 the commercial building which had been given to her at the time of her agreement with the defendant with respect to the division of their assets. However, it does seem that under all of the appropriate elements of § 46b-81 of the General Statutes, she is entitled to a 50/50 distribution of the assets. This is not only what appears to the court to be fair and equitable under all of the circumstances but it is also what the defendant agreed to in 1986 or 1987 when he signed exhibit E. The only question is what is the total value of the combined assets.
The parties assets seem to be as follows. The defendant pursuant to his financial affidavit lists $14,136,000 as his total assets. The plaintiff lists $3,013,411 as her total assets. However, the valuation that she has ascribed to her condominium on West Lion Park in Greenwich and the commercial building at Deer Park appears to be undervalued. The Lion Park condo, for example, was valued by the defendant in 1986 when he gave it to her at $600,000, $300,000 being his interest in it. The commercial building in Deer Park which produces a rental of $200,000 a year was valued by the plaintiff at $1,000,000 on the basis of her having seen her husband use that figure for depreciation on income tax returns; however, he has valued it at $2,500,000 and has offered to buy it for $3,000,000.
The court finds that the condo is worth at least $550,000 and the commercial building at least $2,000,000 thereby adding $1,055,000 to the plaintiff's total assets resulting in a total of $4,168,411. Adding that amount to the defendant's total of $14,136,000 equals $18,304,411 for total assets. Dividing that by two equals $9,152,205.50. Deducting from that amount the plaintiff's assets of $4,168,411, leaves a total of $4,943,794.50. This is the amount the plaintiff requires in order to have received one half of the total assets of the marriage.
It is not clear whether the plaintiff has medical insurance. If she does not, then she should be able to obtain that insurance through her husband's company or companies under COBRA at her expense.
As far as the second amended complaint against the defendants Adrian and Peter Rolla, that is dismissed for two reasons. One is that the transaction was not with them but with the company which they run and two there was no proof that the consideration given was in any sense inadequate or resulted in depriving the court of jurisdiction over the property in question. Consequently, the CT Page 6015 court finds the issues for the defendants.
It is apparent from a recital of the facts that this action is not really about money but about the plaintiff's feeling of abandonment by her husband and children; first, with respect to her husband's liaisons with other women and particularly the one with whom he has an extended relationship; and second, with the discovery that he had transferred stock in the ITP Corporation to his children in return for the promissory note, stock which would have given her a connection with her children who were running the company and who did not want her to have such a connection. The result of the plaintiff then citing in the children as defendants has been to alienate them and prevent her from seeing her grandchildren as well as her children.
The court hopes that with the ending of this case will result in all of the parties returning to a more amicable relationship. If the court had the power, it would order them all to go into counseling so as to establish some form of communication among them, not between the plaintiff and defendant but between the plaintiff and Adrian and Peter so that at least the plaintiff could see her grandchildren as well as her children. Absent that power, the court urges counsel for the parties to see what they can do to bring them together.
Having considered all of the elements set forth in §46b-81 of the General Statutes, the court makes the following findings and orders:
 1. The parties were married in 1954 and the marriage has broken down irretrievably and it is hereby dissolved.
 2. The plaintiff has lived in Connecticut for more than a year prior to the institution of this action.
 3. There were two children born of this marriage who are now adults and are the defendants in the plaintiff's amended complaint.
 4. The cause of the breakdown was a combination of the defendant being a workaholic and therefore being absent from home for extended periods of time and while away apparently engaging in relations with other women. The plaintiff was also partly responsible because she objected to the defendant's working and to his enterprises, all of which were successfully, and CT Page 6016 apparently gave him more criticism than support on the occasions that he did come home. Consequently, the court finds that the defendant was primarily but not entirely responsible for the breakdown of the marriage.
 5. The transaction forming the basis of the complaint against the defendants Peter and Adrian Rolla was not with them but with the company they head; to wit: ITP, and it did not involve a conveyance of property without adequate consideration. This complaint, therefore, is dismissed.
 6. Both parties contributed equally to the marital estate and to the marriage.
 7. Both parties are well educated with the plaintiff having an A.B. degree from Hunter and the defendant a business degree and a law degree. Both are capable of acquiring assets with the defendant far and away more capable of doing so than the plaintiff.
 8. The parties did enter into an agreement in 1986 or 1987 to divide the assets equally in the event of a divorce and also to leave their assets to the children after their deaths.
 9. The total marital assets amount to $18,202,411, arrived at as follows: the defendant's total assets equal $14,136,000 and the plaintiff's total assets equal $4,168,411. Dividing this total by two gives a total of $9,152,205.50 and subtracting the plaintiff's total assets of $4,168.411 from this figures leaves a balance of $4,983,794.50, which equals the amount the defendant must contribute to the plaintiff in order to achieve an equal division of the assets of the marital estate.
 10. The defendant shall pay the amount ordered to the plaintiff as follows: one half within three (3) months of the date of the judgment and the balance within three (3) months thereafter.
11. Each party shall be responsible for his or her liabilities.
12. Each party shall be responsible for his or her counsel fees.
 13. The defendant shall take whatever steps are necessary to permit the plaintiff, if she so chooses, to obtain medical CT Page 6017 insurance at her expense under COBRA from any one of the companies that he owns or controls.
 14. Given the distribution of the assets, no wage execution order is appropriate.
MARGARET C. DRISCOLL STATE TRIAL REFEREE